B 27 (Official Form 27) (12/13)

# UNITED STATES BANKRUPTCY COURT
## Middle District of Florida

In re Danny Goodman Jr.,
*Debtor*

Case No. 15-01852
Chapter 7

## AMENDED
## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1. Creditor's Name: CSC Logic

2. Amount of the debt subject to this reaffirmation agreement:
   $ 30,354.92 on the date of bankruptcy $ 30,354.92 to be paid under reaffirmation agreement

3. Annual percentage rate of interest: 2.90 % prior to bankruptcy
   2.90 % under reaffirmation agreement ( ✓ Fixed Rate ___ Adjustable Rate)

4. Repayment terms (if fixed rate): $ 483.71 per month for 68 months

5. Collateral, if any, securing the debt: Current market value: $ 28,627.00
   Description: 2013 Chevrolet Traverse

6. Does the creditor assert that the debt is nondischargeable? ___ Yes ✓ No
(If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

| **Debtor's Schedule I and J Entries** | **Debtor's Income and Expenses as Stated on Reaffirmation Agreement** |
|---|---|
| 7A. Total monthly income from $7,356.78 Schedule I, line 12 | 7B. Monthly income from all sources after payroll deductions $7,356.78 |
| 8A. Total monthly expenses $6,533.00 from Schedule J, line 22 | 8B. Monthly expenses $5,458.00 |
| 9A. Total monthly payments on $0 reaffirmed debts not listed on Schedule J | 9B. Total monthly payments on reaffirmed debts not included in monthly expenses $0 |
| | 10B. Net monthly income $1,898.78 (Subtract sum of lines 8B and 9B from line 7B. If total is less than zero, put the number in brackets.) |

11. Explain with specificity any difference between the income amounts (7A and 7B):
    .
    .

12. Explain with specificity any difference between the expense amounts (8A and 8B):
    . Decrease in 8B is due to debt elimination by filing bankruptcy petition, and also due to a
    . recalculated monthly budget.

If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true and correct.

_____          _____
Signature of Debtor (only required if              Signature of Joint Debtor (if applicable, and only
line 11 or 12 is completed)                                required if line 11 or 12 is completed)

**Other Information**

☐ Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt:


Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
\_\_\_\_\_Yes          _____No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
\_\_\_\_\_Yes          _____No


## FILER'S CERTIFICATION

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

_____
Signature

_Jorge Dominguez, Bankruptcy Specialist_
Print/Type Name & Signer's Relation to Case

Check one.
☐ Presumption of Undue Hardship
☒ No Presumption of Undue Hardship
*See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
## Middle District of Florida

In re Danny Goodman Jr., *Debtor*

Case No. 15-01852

Chapter 7

## AMENDED REAFFIRMATION DOCUMENTS

**Name of Creditor:** CSC Logic

☐ Check this box if Creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: Auto Loan
   *For example, auto loan*

B. *AMOUNT REAFFIRMED*: $ 30,354.92

   The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before 03/18/2015, which is the date of the Disclosure Statement portion of this form (Part V).

   *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is 2.90 %.

   *See definition of "Annual Percentage Rate" in Part V, Section C below.*

   This is a *(check one)* ☑ Fixed rate    ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☑　　$ __483.71__ per month for __68__ months starting on __03/22/2015__.

☐　　Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

E. Describe the collateral, if any, securing the debt:

　　Description:　　　　　　2013 Chevrolet Traverse
　　Current Market Value　　$　　　　　28,627.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☑ Yes. What was the purchase price for the collateral?　　$　　　33,144.15

☐ No. What was the amount of the original loan?　　$ _____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 30,354.92 | $ 30,354.92 |
| Annual Percentage Rate | 2.900 % | 2.90 % |
| Monthly Payment | $ 483.71 | $ 483.71 |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.　　DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

　　Check one.　☐ Yes　　☐ No

B. Is the creditor a credit union?

　　Check one.　☐ Yes　　☐ No

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

   a. Monthly income from all sources after payroll deductions
   (take-home pay plus any other income)                                $_____

   b. Monthly expenses (including all reaffirmed debts except
   this one)                                                            $_____

   c. Amount available to pay this reaffirmed debt (subtract b. from a.) $_____

   d. Amount of monthly payment required for this reaffirmed debt       $_____

   *If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

   Check one of the two statements below, if applicable:

   [X] You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

   [ ] You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

   Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

   [ ] You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 4/8/15     Signature _____
                                          *Debtor*

Date _____ Signature _____
                                    *Joint Debtor, if any*

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor  CSC Logic                              P.O. Box 1518 Coppell, TX 75019
              *Print Name*                                       *Address*

              Jorge Dominguez                                    03/18/2015
        *Print Name of Representative*           *Signature*        *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 4/14/15    Signature of Debtor's Attorney _____

                Print Name of Debtor's Attorney  Michael A. Nardella

# PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

      i. **if the creditor is not a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

      ii. **if the creditor is a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement,** the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form B240B to do this.

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

```
FORM# 2340                                              DEAL# 116519
STORE# 530                    (WITH ARBITRATION PROVISION)    STK# B3108550
                  Dealer Number _____  Contract Number _____  CUST# 4564429
```

| Buyer Name and Address | Co-Buyer Name and Address | Seller-Creditor (Name and Address) |
|---|---|---|
| DENNY GOODMAN JR<br>2636 REAGAN TRAIL<br>LAKE MARY, SEMINOLE, FL 32746-1911<br>Buyer's Birth Month: DECEMBER | Co-Buyer's Birth Month: | AUTONATION CHEVROLET AIRPORT<br>5600 LEE VISTA BLVD<br>ORLANDO, FL 32812 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller-Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis at the Base Rate of 2.900 % per year. The Truth-In-Lending Disclosures below are part of this contract.

You have thoroughly inspected, accepted, and approved the vehicle in all respects.

| New/Used/Demo | Year | Make and Model | Weight (lbs) | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2013 | CHEVROLET TRAVERSE | N/A | 1GNKRLKD0DJ109660 | Personal, family or household unless otherwise indicated below<br>☐ business ☐<br>☐ agricultural ☐ |

You agree that we advised you whether, based on seller's knowledge, the vehicle was stored, registered, or used as a domestic police vehicle, short term rental or is a vehicle that is rebuilt or assembled from parts, a kit car, a replica, a flood vehicle, or a manufacturer buy back.

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 9345.00 |
|---|---|---|---|---|
| 2.90 % | $ 3134.10 | $ 33144.15 | $ 36278.25 | $ 45623.25 (e) |

(e) means an estimate

Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 75 | 483.71 | Monthly beginning 03/22/2014 |
| N/A | N/A | N/A |

Or As Follows: N/A

Late Charge. If payment is not received in full within 12 days after it is due, you will pay a late charge of 5 % of each installment.

Prepayment. If you pay off all your debt early, you may have to pay a penalty.

Security Interest. You are giving a security interest in the vehicle being purchased.

Additional Information: See this contract for more information including information about nonpayment, default, prepayment penalties, any required repayment in full before the scheduled date and security interest.

ITEMIZATION OF AMOUNT FINANCED
1  Cash Price (including $ 1294.70 sales tax)                    $ 39232.35 (1)
2  Total Downpayment =
      Gross Trade-In Allowance           $ 15400.00
      Less Pay Off Made By Seller (s)    $ 12055.00
      Equals Net Trade In                $ 3345.00
   + Cash                                $ 1000.00
   + Other REBATE                        $ 1000.00
   (If total downpayment is negative, enter "0" and see 4c below)    $ 5345.00 (2)
3  Unpaid Balance of Cash Price (1 minus 2)                       $ 33887.35 (3)
4  Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts)
   A  Cost of Optional Credit Insurance Paid to Insurance
      Company or Companies
         Life         N/A          $ N/A
         Disability   N/A          $ N/A                          $ N/A
   B  Vendor's Single Interest Insurance Paid to Insurance Company   $ N/A
   C  Other Optional Insurance Paid to Insurance Company or Companies $ N/A
   D  Optional Gap Contract                                        $ N/A
   E  Official Fees Paid to Government Agencies                    $ N/A
   F  Government Documentary Stamp Taxes                           $ 116.20
   G  Government Taxes Not Included in Cash Price                  $ N/A
   H  Government License and/or Registration Fees                  $ 100.00
   I  Government Certificate of Title Fees                         $ N/A
   J  Other Charges (Seller must identify who is paid and
      describe purpose)
         to N/A        for N/A                                     $ N/A
         to N/A        for N/A                                     $ N/A
         ... (multiple N/A lines)
      Total Other Charges and Amounts Paid to Others on Your Behalf $ 216.20 (4)
5  Loan Processing Fee Paid to Seller (Prepaid Finance Charge)    $ N/A (5)
6  Amount Financed (3+4+5)                                        $ 33144.15 (6)

OPTIONAL: ☐ You pay no finance charge if the Amount Financed, Item 6, is paid in full on or before
N/A .  Year/N/A ... SELLER'S INITIALS ___ N/A

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A    Name N/A    Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X ____ N/A

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI Insurance): If the preceding box is checked, the Creditor requires VSI...

Insurance Company Name N/A
Home Office Address N/A
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments.

Check the insurance you want and sign below:
Optional Credit Insurance
☐ Credit Life  ☐ Buyer  ☐ Co-Buyer  ☐ Both
Term N/A
☐ Credit Disability  ☐ Buyer  ☐ Co-Buyer  ☐ Both
Term N/A
Premium:
   Credit Life $ N/A
   Credit Disability $ N/A

X N/A                        N/A
Buyer                        Date
X N/A                        N/A
Co-Buyer                     Date

2. You understand that the credit life coverage may be declined at the time of application, you are unable to engage in employment or unable to perform normal exertion if a person of like age and sex. We need not buy the acknowledgement of this proposed credit life insurance policy does not sanction this restriction.

X N/A                        N/A
Buyer                        Date
X N/A                        N/A
Co-Buyer                     Date

3. You understand that the benefits under the policy will terminate when you reach a certain age and reflect that your age is accurately represented on the application or policy.

X N/A                        N/A
Buyer                        Date
X N/A                        N/A
Co-Buyer                     Date

Other Optional Insurance
☐ N/A                        N/A
   Type of Insurance         Term
Premium $ N/A
Ins. Co. Name & Address     N/A
                             N/A

☐ N/A                        N/A
   Type of Insurance         Term
Premium $ N/A
Ins. Co. Name & Address     N/A
                             N/A

☐ N/A                        N/A
   Type of Insurance         Term
Premium $ N/A
Ins. Co. Name & Address     N/A
                             N/A

☐ N/A                        N/A
   Type of Insurance         Term
Premium $ N/A
Ins. Co. Name & Address     N/A
                             N/A

☐ N/A                        N/A
   Type of Insurance         Term
Premium $ N/A
Ins. Co. Name & Address     N/A
                             N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not to buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X N/A                        N/A
Buyer Signature              Date
X N/A                        N/A
Co-Buyer Signature           Date

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.**

Returned Payment Charge. If any check or other payment instrument you give us is returned to us through normal banking channels unpaid in the full amount shown on it, you will pay us a charge of $25 if the payment amount is $50 or less, $30 if the payment amount is over $50 but not more than $300, or $40 if the payment amount is over $300, or such amount as permitted by law.

Florida documentary stamp tax is required by law in the amount of $ 116.20 . Tax been paid or will be paid directly to the Department of Revenue. Certificate of Registration no. 26-8000835726-1

You assign all manufacturer rebates and cash back incentives used as a downpayment (as this contract is written) to seller. You agree to complete all documents required for assignment of rebates and incentives.

### Trade-In Vehicle

| Year 2012 | Make/Model CHEVROLET EQ | Miles N/A |
|---|---|---|
| VIN 2GNALBEK3C6222844 | | VIN N/A |
| Gross Trade-In Allowance $ 15400.00 | | Gross Trade-In Allowance $ N/A |
| Payoff owed by Seller $ 12055.00 | | Payoff owed by Seller $ N/A |
| Lienholder E. TOYOTA | | Lienholder N/A |

You assign to Seller all of your rights, title and interest in such trade-in vehicle(s). Except as expressly stated to Seller in writing, you represent that your trade-in vehicle(s) has not been involved in an accident, has not had any major body damage or repairs, any major engine repair, and was not previously used as a taxicab, police vehicle, short term rental or is a vehicle that is rebuilt or assembled from parts, a kit car, a replica, a flood vehicle, or a manufacturer buy back.

Buyer Initials ___   Co-Buyer Initials N/A

Trade-In Payoff Agreement. Seller relies on information that you and/or the lienholder or lessor of your trade-in vehicle furnish at the trade-in payoff amount shown above and in Item 2 of the Itemization of Amount Financed as the Pay Off Made by Seller. You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown above (and reflect Item 2 to the lienholder or lessor of the trade-in vehicle, or its designee). If the actual payoff amount is more than the amount shown above and in Item 2 you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown above and in Item 2 Seller will refund to you any surplus Seller receives from your payoff lienholder or lessor. Except as noted in the "AS IS" list on the back of the contract, any assignment of the contract shall not be delayed or impaired by Pay Off. No Seller show assume an Item 2 or any refund.

Buyer Signature X ___    Co-Buyer Signature X ___ N/A

Agreement to Arbitrate. By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X ___    Co-Buyer Signs X ___

SELLER'S RIGHT TO CANCEL – If Buyer and Co-buyer sign here, the provisions of the Seller's Right to Cancel section on the back, which gives the Seller the right to cancel if Seller is unable to assign this contract within 30 days, will apply. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller a charge of $ 99.00 per day from the date of cancellation until the vehicle is returned or repossessed.

Buyer Signs ___    Co-Buyer Signs ___ N/A

### NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.    Buyer Signs X ___   Co-Buyer Signs X N/A

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under the contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

See back for other important agreements.

NOTICE TO THE BUYER: a) Do not sign this contract before you read it or if it contains any blank spaces. b) You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration provision on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X ___ Date 02/23/14    Co-Buyer Signs X ___ N/A    Date ___

Co-buyer and Other Owners – A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs X ___ N/A    Address N/A

Seller signs X AUTONATION CHEVROLET AIRPORT Date 02/23/14 By ___  Title ___

Seller assigns its interest in this contract to SUNTRUST BANK (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse    ☒ Assigned without recourse    ☐ Assigned with limited recourse

Seller AUTONATION CHEVROLET AIRPORT    By ___    Title ___

ILAW                                                            ORIGINAL LIENHOLDER

# POWER OF ATTORNEY

STATE OF  North Carolina

COUNTY OF  Guilford

KNOW ALL MEN BY THESE PRESENTS, that  Branch Banking and Trust Co.  of the County of  Guilford  State of North Carolina , has made, constituted and appointed and by these presents does make, constitute and appoint CSC Logic, Inc., as attorney-in-fact and in the name of Branch Banking and Trust Co. , place and stead, to have the power to endorse all checks and drafts and perform all acts necessary to perform its duties as Servicer under previously executed loan servicing agreement(s) dated as of  December 19th, 2014 .

The said attorney-in-fact shall have no other powers not given in said loan servicing agreements.

IN WITNESS WHEREOF, this special power of attorney is signed this  19th  day of  December , 2014.

Signed By: *Derek K. Lane*
Title: EXECUTIVE VICE PRESIDENT

# ACKNOWLEDGEMENT

STATE OF   North Carolina

COUNTY OF  Guilford

BEFORE ME, the undersigned authority, in and for said county and state, on this day personally appeared  Derek K. Lane , known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she is authorized to execute the same on behalf of Branch Banking and Trust Co., a corporation, for the purposes and consideration therein expressed and in the capacity stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this  19th  day of  December , 2014. My Commission Expires:  February 27, 2018 

*Wanda S Clark* Notary Public in and for the State of  North Carolina .

